**UNITED STATES of America**

v.

**Ellis TURK, M.D.**

**Civ. No. HM–89–3161.**

United States District Court,
D. Maryland.

Oct. 29, 1991.

Ira L. Oring, Asst. U.S. Atty., Baltimore, Md., for plaintiff.

Ellis Turk, M.D., defendant, pro se.

## MEMORANDUM AND ORDER

HERBERT F. MURRAY, Senior District Judge.

The plaintiff in this civil action is the United States of America. The United States has brought suit against Ellis Turk, M.D. ("Dr. Turk") seeking civil penalties for violation of the record keeping requirements of the Controlled Substances Act, 21 U.S.C. §§ 827(a)(3) and 842(a)(5). Dr. Turk is registered with the United States Drug Enforcement Agency ("DEA") and is certified to dispense certain controlled substances to his patients. During December, 1988, an unannounced "compliance inspection" by the DEA reportedly revealed that Dr. Turk had failed to maintain accurate records of controlled substances received and sold by him. The government alleges that Dr. Turk could not account for 1460 30 mg. capsules of Phentermine and that he further could not account for 10,638 35 mg. tablets of Phendimetrazine, both scheduled controlled substances. The government seeks fines of $25,000 for each of the two violations pursuant to section 842(c)(1).

21 U.S.C. § 827(a)(3) provides in relevant part:

> [E]very registrant under this subchapter manufacturing, distributing, or dispensing a controlled substance or substances shall maintain, on a current basis, a complete and accurate record of each such substance manufactured, received, sold, delivered, or otherwise disposed of by him....

21 U.S.C. § 842(a)(5) prohibits the refusal or failure "to make, keep, or furnish any record, report, notification, declaration, order or order form, statement, invoice, or information required" under the applicable provisions.

During December of 1988, two agents for the DEA conducted separate audits of Dr. Turk's records concerning his receipt, sale, and delivery of these controlled substances. As part of their investigation, the agents physically counted the dosage units on hand at the defendant's practice as of December 12, 1988. The agents then examined Dr. Turk's ledger book to determine the number of tablets on hand as of December 29, 1987, the beginning of the audit period, and examined his monthly dispensing records. As part of their investigation, the agents contacted Dr. Turk's supplier, Moore Medical Corporation, to confirm the number of dosage units he had acquired. During this period, defendant reported no losses or thefts to the DEA. In the course of these investigations, Special Agent David Bruce determined that Dr. Turk could not account for 1919 capsules of Phentermine or 10,631 tablets of Phendimetrazine. Prior to the institution of this lawsuit, DEA Diversion Investigator Roderick Watson reviewed Agent Bruce's calculations and determined that Dr. Turk could not account for 1469 capsules of Phentermine or 10,638 tablets of Phendimetrazine. As a result of their findings, the government initiated the instant litigation.

Presently pending before the Court are what appear to be cross-motions for summary judgment filed by the opposing parties. Dr. Turk, who has no legal training and is proceeding pro se, has vigorously, if not entirely professionally, denied these claims against him. Legally, the issue before the Court is quite simple: There is no dispute that Dr. Turk was licensed by the DEA to dispense controlled substances and as such was legally obligated to conform to the record keeping requirements of 21 U.S.C. §§ 827(a)(3) and 842(a)(5). The only issue in dispute is whether the defendant in fact complied with those requirements.

Summary judgement pursuant to Federal Rule of Civil Procedure 56 is only appropriate if there is no *"genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91

L.Ed.2d 202 (1986) (emphasis in original). There is no question that the issue of whether Dr. Turk complied with the Controlled Substances Act is material to the present litigation. "[D]isputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.; see also* 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, pp. 93–95 (1983). The controlling issue before this Court is whether the factual dispute over Dr. Turk's inventory is *genuine.* A factual dispute can only be considered genuine if "the evidence is such that a reasonable jury could return a verdict for [Dr. Turk]." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. at 2511 (citing *Dumbrowski v. Eastland,* 387 U.S. 82, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967) and *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

As stated previously, Dr. Turk, who is representing himself in this matter, vigorously denies the claims against him as well as the factual conclusions of the government auditors. In his opposition to the government's motion, Dr. Turk argues that Agent Bruce's figures "may be off the mark by a multiple factor of 5 or 6 times too much.... In order for me to have dispensed the number of pills Mr. Bruce claims, I would have to have seen more than 200 patients per day, rather than the 35 to 40 patients which was about our average per day." Memorandum of Points and Authorities in Support of Defendant's Opposition to Plaintiff's Motion for Summary Judgment at 9–10. It therefore appears to the Court that there is a genuine issue of material fact in this case; namely whether Dr. Turk dispensed or otherwise disposed of controlled drugs without complying with the record keeping requirements of the Controlled Substances Act.

■ A complicating factor in this case is the fact that on December 11, 1989, the government requested Admissions of Fact that apparently were never responded to by Dr. Turk. The requested admissions, if admitted, would certainly have been dispositive of the factual issues presented to the Court. Specifically, the government requested admissions from the defendant concerning the number of dosage units on hand at the beginning of the audit period, the number purchased during this period, the number on hand at the end of the period, and the number dispensed and otherwise disposed of during the audit period. Plaintiff's Motion for Summary Judgment at 6. Dr. Turk has never responded to these requests despite being ordered to do so by the Memorandum and Order of Magistrate Judge Blake dated November 1, 1990. *Id.*

Federal Rule of Civil Procedure 36(a) specifically states that any requested admission not responded to within 30 days after service is to be deemed by the Court as admitted.[1] As a general rule, "[a]dmissions obtained under Rule 36, including matters deemed to be admitted by a party's failure to respond to a request for admissions, can form the basis for granting Summary Judgment." *Gardner v. Borden, Inc.,* 110 F.R.D. 696, 697 (S.D.W.Va.1986) (quoting *Freed v. Plastic Packaging Materials, Inc.,* 66 F.R.D. 550, 552 (E.D.Pa. 1975)); *Weva Oil Corp. v. Belco Petroleum Corp.,* 68 F.R.D. 663, 667–68 (N.D.W.Va.1975). In this case, however, the Court is reluctant to grant summary judgment against a pro se defendant based solely upon his failure to comply with the discovery requirements of the Federal Rules of Civil Procedure.

■ The Court notes that the sanctions expressed by Federal Rule of Civil Proce-

---

1. Federal Rule of Civil Procedure 36(a) reads in relevant part:

Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or the parties attorney....

dure 36(a) are not mandatory. The Rule expressly provides that this Court may shorten or lengthen the time a party is allowed to respond.[2] As such, "[b]ecause the district court has the power to allow a longer time, courts and commentators view this to mean that the court, in its discretion, may permit the filing of an answer that would otherwise be untimely." *Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1312 (8th Cir.1983) ("Therefore, the failure to respond in a timely fashion does not require the court automatically to deem all matters admitted."); *see also* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2257, at 719–20 (1970) (hereinafter "Wright and Miller"). Furthermore, district courts have considerable discretion over the withdrawal of admissions once they have been made. *Farr Man & Co. v. M/V Rozita*, 903 F.2d 871, 876 (1st Cir. 1990); Wright and Miller § 2264 (Supp. 1991), at 306.

The Court does not believe that to conclusively hold these central facts to be admitted against this pro se defendant would further the interests of justice. The Court, while fully aware that to condone Dr. Turk's lethargy potentially undermines the valuable benefits of Rule 36(a), is reluctant to use Rule 36 procedures as a snare for this unwary pro se defendant. "It does not further the interests of justice to automatically determine all the issues in a lawsuit and enter summary judgment against a party because a deadline is missed." *Hadra v. Herman Blum Consulting Engineers*, 74 F.R.D. 113, 114 (N.D.Tex.1977). *See also Pickens v. Equitable Life Assur. Soc. of U.S.*, 413 F.2d 1390, 1393 (5th Cir. 1969) (holding that requests for admissions as to central facts in dispute are beyond the proper scope of the rule that requests not specifically denied or objected to in writing shall be deemed admitted). The Court is additionally aware that the United States Supreme Court has held that "there are constitutional limitations upon the power of courts, even in the aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause." *Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 209, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958) (holding that the provisions of Rule 37 must be read in light of the provisions of the Fifth Amendment which states that no party shall be deprived of property without due process of law).

To reiterate, the Court does not wish for Dr. Turk to infer from this Memorandum and Order that the rules of legal procedure do not apply to him simply because he is a pro se defendant. Rather, the Court is holding that to conclusively find the facts central to this litigation against the defendant without giving him an opportunity to be heard would not further the interests of justice. In furtherance of the competing goals of this Court to prevent injustice to the defendant while at the same time preventing frivolous litigation, the Court will include as an element of its Order in this case that the defendant shall have thirty (30) days from the issuance of this Memorandum and Order to respond to the Request For Admissions of Fact attached to the government's Motion For Summary Judgement as Exhibit 3. If it should come to the Court's attention that thirty (30) days have passed with no response from the defendant, the Court will not hesitate to conclusively deem those facts to be admitted as true in accordance with the terms of Rule 36. At that time the Court will entertain a renewed Motion for Summary Judgment by the government.

Accordingly, it is this 29th day of October, 1991, by the United States District Court for the District of Maryland,

ORDERED:

(1) that plaintiff's Motion for Summary Judgment be, and the same hereby is, *Denied;*

(2) that defendant's Motion for Summary Judgment be, and the same hereby is, *Denied;*

(3) that the defendant shall, within thirty (30) days from the issuance of this Memo-

**2.** *See supra,* note 1.

randum and Order, respond to the plaintiff's Request for Admissions of Fact and Genuiness (sic) of Documents, originally served upon the defendant on December 11, 1989 and attached to plaintiff's Motion for Summary Judgment as Exhibit 3;

(4) that the plaintiff shall, within forty-five (45) days from the issuance of this Memorandum and Order, file a status report updating the Court as to the developments in this case; and

(5) that the Clerk of the Court shall mail a copy of this Memorandum and Order to the parties.